FILED

CLERK, U.S. DISTRICT COURT

4/12/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____ VV _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Gregg Roberts

43430 E Florida Ave F-293

Hemet CA 92544

951-350-5371

gregg@legalsupport-sc.com

Plaintiff Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| Gregg Roberts,<br>Plaintiff,<br><br>v.<br><br>David W. Slayton, in his personal and official capacities; David H. Yamasaki, in his personal and official capacities; Sandra Pigati-Pazano, in her personal capacity; Timothy Ly in his personal capacity; and Jane Does 1-50 and John Does 1-50 in their personal capacities;<br><br>Defendants. | **Case No. 5:26-CV-00400-CAS-DMK**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)** |

## I. INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 to redress repeated and ongoing violations of Plaintiff Gregg Roberts' constitutional rights caused by unlawful policies, customs, and practices governing the intake, rejection, completion, and processing of civil filings by clerks of the California Superior Courts.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

2. Acting under color of state law, Defendants have imposed arbitrary, non-statutory filing requirements; rejected legally compliant filings; completed required portions of court-mandated forms with false legal statements; and implemented administrative workflows that foreseeably obstruct enforcement of valid court judgments, thereby denying Plaintiff meaningful access to the courts and procedural due process.

3. These violations are not isolated clerical errors. They are the predictable result of institutional practices that elevate administrative convenience over statutory compliance and constitutional rights.

4. Roberts seeks declaratory relief, narrowly tailored prospective injunctive relief, compensatory damages where applicable, and attorney's fees.

5. Roberts files this First Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1). The original Complaint was never served or responded to, so no deadline under that rule was ever set.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred within this District.

## III. PARTIES

8. Plaintiff Gregg Roberts ("Roberts") is a resident of California and a judgment creditor who regularly files enforcement-related pleadings in California Superior Courts and who has personally suffered constitutional injury as a result of Defendants' conduct.

9. David W. Slayton is a California public official responsible for the administration, supervision, training, and policy-setting related to clerk intake and filing practices of the Los Angeles Superior Court ("LASC"). This Defendant is sued in his personal capacity for damages arising from his own actions and deliberate indifference, and in his official capacity for declaratory and injunctive relief.

10. David H. Yamasaki is a California public official responsible for the administration, supervision, training, and policy-setting related to clerk intake and filing practices of the Orange Superior Court ("OSC"). This Defendant is sued in his personal capacity for

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

2

damages arising from his own actions and deliberate indifference, and in his official capacity for declaratory and injunctive relief.

11. Defendants John Does 1–100 are deputy clerks, supervisors, managers, or agents who personally participated in, enforced, or ratified the challenged practices. They are sued in their personal capacities.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Reliance on Statutory Filing Schemes

12. Roberts routinely submits, for filing or issuance, writs of execution, abstracts of judgment, memoranda of costs, assignments of judgment, and related enforcement documents in strict compliance with the Code of Civil Procedure, Judicial Council forms, and published court rules.

13. Roberts reasonably relies on the statutory structure governing these filings, including statutes that expressly define the role and timing of affidavits of identity in connection with enforcement documents.

### B. Arbitrary Rejection and Improper Completion of Filings

14. Clerks in the subject courts have repeatedly rejected Roberts' legally compliant filings without citing any statute, rule, or court order authorizing rejection, citing incorrect rules, or clearly misinterpreting rules supposedly justifying the rejections.

15. In one instance, in Case #BC709072, an LASC clerk, Sandra Pigati-Pazano, completed a required portion of a court-mandated memorandum of garnishee by inserting the statement *"The Clerk of the Court is not a garnishee and does not hold any property in this case."*

16. That statement was not a neutral factual response. It constituted a legal characterization of the clerk's role in the levy process under CCP §700.190, and was inconsistent with the statutory procedure governing levies on final money judgments, which designates the clerk of the court that entered the judgment as the office through which such a levy is effected and requires endorsement of an execution lien.

17. On information and belief, Sandra Pigati-Pazano discussed with other LASC clerks how to complete the memorandum of garnishee, and those other clerks – some unknown number of Jane Does and John Does – were complicit in inserting legal conclusions into a ministerial form in a manner that interfered with statutory enforcement procedure.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

3

18. In a previous, separate matter, Case #BC546748, an LASC clerk had properly completed the memorandum of garnishee by stating "Property is a document in the custody of the Court. There is no physical property or funds to attach. ([A] copy [of the judgment is] attached to this return)."

19. That endorsement acknowledged that LASC recognized its role as the statutory filing point for levies under CCP §700.190 and that the clerk's function in this context is ministerial – i.e., to acknowledge and endorse the existence of the execution lien – rather than to adjudicate or negate the legal effect of the levy.

20. The statement inserted in Case No. BC709072 by Ms. Pigati-Pazano created an internal inconsistency within the levy process: the levy was made in the manner prescribed by statute, yet the same office designated by statute disclaimed any relevant role. This inconsistency was not authorized by any statute or rule and foreseeably interfered with enforcement of the writ.

21. The clerk's response should have been limited to a factual acknowledgment consistent with the statutory scheme—namely, that the judgment existed in the court's records and could not be physically delivered because it is intangible property. There was no statutory basis for inserting a legal conclusion purporting to negate the clerk's role in the levy process.

22. Prior to initiating the levy in Case No. BC709072, Roberts spent several months communicating with LASC personnel and court counsel regarding the proper procedure under CCP §700.190. Roberts provided LASC with the memorandum of garnishee from Case #BC546748 and informed LASC that the Sheriff's Department had proceeded appropriately thereafter by scheduling a sheriff's sale of the levied judgment.

23. LASC had no reasonable or articulated basis for departing from that previously accepted and successful formulation in Case No. BC709072.

24. The inclusion of the above-described statement caused the Los Angeles County Sheriff's Department to refuse to proceed with enforcement. This was a foreseeable consequence of inserting an unauthorized legal characterization into a required form, thereby creating apparent ambiguity in the levy process where none existed under the governing statute.

25. At all relevant times, the LASC Clerk of the Court was the lawful custodian of judgment records, and service on the Clerk was proper under law.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

26. In addition, when executing the levy, a deputy of the Los Angeles County Sheriff's Department, Deputy Jesus Peralta, deviated from Roberts' explicit written instructions regarding service. After being directed to serve a designated clerk within LASC, the deputy instead accepted guidance from a different court employee who was not the designated recipient and who lacked knowledge of the relevant procedure.

27. Deputy Peralta executed a Notice of Not Found/Service in which he stated of the garnishee, "Must be served at 500 W. Temple, Los Angeles CA 90012. Attn: Controller's office at the Fifth Floor."

28. Shortly thereafter, a Sheriff's Civil Bureau clerk informed Roberts that Deputy Peralta had been provided with that information by an LASC court clerk other than Lucille Cortez, Senior Administrator Central Civil, who had been designated by LASC Counsel to receive service after extensive discussions with Roberts.

29. That Civil Bureau clerk explained further that the office of Ms. Cortez was located behind a locked door. When that door was not quickly opened in response to a knock, Deputy Peralta, should have called the phone number of Ms. Cortez, a number with which he should have been provided based on Roberts' discussions with the Civil Bureau.

30. Instead, Deputy Peralta took the papers to an LASC clerk not located behind a locked door. When Deputy Peralta found such a clerk, that clerk incorrectly advised Deputy Peralta that the Controller's Office would be the proper entity for service.

31. Apparently that clerk's statement was based on an erroneous assumption that the levy sought to reach funds in the court's custody rather than a judgment pursuant to CCP §700.190, as clearly stated on the Notice of Levy packet.

32. Deputy Peralta's failure to serve the designated LASC clerk, Ms. Cortez, and then his reliance on uninformed guidance from a different clerk instead of following Roberts' explicit instructions, resulted in non-service, additional delay, and the need for still more corrective action by Roberts.

33. The acts described above – including the insertion of improper legal conclusions by LASC clerks and the deviation from instructions by sheriff's personnel – caused Roberts to incur additional time, expense, and delay in attempting to enforce his judgment, ultimately making his efforts futile and denying him meaningful access to the courts.

---

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

## C. Improper Rejection of Writ When Judgment Debtor Not a Natural Person

34. Roberts submitted to the LASC Clerk's office a writ of execution that included a statement of the type of legal entity applicable to the judgment debtor, in compliance with CCP § 699.520(d), "If the judgment debtor is other than a natural person, the type of legal entity shall be stated." The submission was assigned transaction ID 24LA00006804.

35. An LASC clerk issued a rejection of that writ with the stated reason "Correct debtors name," without stating what was allegedly wrong with the name. The name was absolutely correct.

36. An LASC supervisor soon thereafter explained that the reason for the rejection was that the words on line 2 of Item 4 of the Writ of Execution, "A Domestic Corporation," do not appear in the judgment, therefore those words cannot appear on the writ in the Item 4 box with the judgment debtor's name because they represent an attempt to present a different name of the judgment debtor.

37. In hopes of the issue being sent to a different supervisor who would overturn the incorrect rejection, Roberts soon resubmitted as transaction ID 24LA00049682 the writ with an explanation to the e-filing clerk summarizing CCP 699.520(d). Another rejection was issued stating "Judgment debtors [*sic*] name incorrect. "A domestic coporation" [*sic*] cannot be added without affidavit of ID or amended judgment. Pelase [*sic*] resubmit when name is updated properly." According to the supervisor Roberts spoke with, this rejection was supposedly confirmed by a manager, but that manager never returned Roberts' phone calls.

38. In a subsequent submission, transaction ID 24LA00160178, Roberts included, inside the Item 4 box, the very same data labels that are located immediately above it. In response to that submission, another rejection was issued, stating "Reject Reason Other: Gregg Roberts (Assignee) failed self certification   verification for field Is First Appearance Fee Paid. Please correct in order for the writ to be processed." That rejection was issued on January 30, 2024 and was part of an ongoing series of improper rejections. Accordingly, this filing is timely as to that first set of rejections, among all the rejections complained of herein.

39. That last rejection was also invalid.

40. An assignee of judgment "steps into the shoes" of the original judgment creditor, gaining the right to continue the existing litigation without the need to pay for the privilege.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

41. California court clerks, even in Los Angeles County, have for many years routinely accepted filings of assignment of judgment by Roberts and many other judgment enforcers without requiring payment of a first appearance fee.

42. For reasons unknown to Plaintiff, later on January 30, the writ was issued despite the above-referenced rejection earlier that day.

43. These unfounded rejections have cost Roberts significant time, multiple e-filing fees, and frustration.

44. It works injustice against judgment debtors, also, to impose unnecessary costs on them. Judgment creditors, whether pro se or through counsel, may add the costs of multiple resubmissions and the work necessary to accomplish such resubmissions, onto what is owed on a judgment.

**D. Improper Handling of Affidavits of Identity (Statutory Violations)**

45. In multiple instances, and in what now seems to be official LASC policy, clerks have required Roberts to submit an affidavit of identity as a standalone filing, and then *later* to submit a writ of execution or abstract of judgment containing any added names, *after* the affidavit has been separately reviewed and approved or denied by a judicial officer.

46. This practice directly contradicts California statutory law:

> "Affidavit of Identity" means an affidavit or declaration executed by a judgment creditor, under penalty of perjury, that is filed with the clerk of the court in which the judgment is entered at the time the judgment creditor files for a writ of execution or an abstract of judgment....."
>
> CCP § 680.135.

47. When an affidavit of identity is presented for filing and approval, the governing statutes contemplate a single, integrated filing, not serial submissions:

> The abstract of judgment shall be certified in the name of the judgment debtor as listed on the judgment and may also include the additional name or names by which the judgment debtor is known as set forth in the affidavit of identity, as defined in Section 680.135, filed by the judgment creditor with the application for issuance of the abstract of judgment.
>
> CCP § 674(c)(1).

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

48. Likewise, a writ of execution is issued upon application under CCP § 700.010(a), and nothing in the statutory scheme authorizes a clerk to condition issuance on the prior approval of a separately filed affidavit of identity.

49. Judicial Council Form EJ-130 (Writ of Execution) likewise contemplates that any supporting affidavit is submitted as part of the writ application itself.

50. By requiring litigants to file an affidavit of identity separately and only later file the associated writ or abstract, Defendants imposed an unauthorized, non-statutory procedural hurdle that forced Roberts to pay duplicative electronic filing fees and endure additional delay before lawful enforcement could proceed.

51. Other California counties process affidavits of identity and associated writs or abstracts together, demonstrating that lawful and efficient workflows are readily achievable and that Defendants' practice is not compelled by statute or operational necessity.

52. Defendants' practices, as complained of herein, present a continuing and recurring barrier to Roberts' access to the courts and enforcement remedies available only through legal filings.

### E. Improper Rejection of Acknowledgments of assignment of Judgment

53. Sometime in late December 2025 or early January 2026, Roberts visited OSC in person and presented eight packets in small claims cases for filing at the service window which was attended by a black female, Jane Doe #1. Each packet consisted of a notarized acknowledgment of assignment of judgment, a memorandum claiming interest, and one or more writs of execution.

54. Jane Doe #1 informed Roberts that it was too late in the day for her to take the time to review the packets for acceptance or rejection, because too many other people were waiting and it was approaching closing time. She told Roberts that she would review the packets and accept or reject each packet before she left work for the day.

55. About a week later, Roberts received an envelope containing all of the packets, all of which had been rejected. The rejections were dated January 6, 2026 and were signed with a short, illegible squiggle. On information and belief, Roberts alleges that Jane Doe #1 was the person who signed the notices of rejection and made the rejection decisions.

56. The stated rejection reason was "The address for the Judgement [*sic*] Creditor must match the address on the Judgement [*sic*]."

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

8

57. No California or local rule states such a requirement.

58. The rule on which John Doe #1 apparently relied for her rejection was evidently California Rule of Court ("CRC") 2.200, which states:

> "An attorney or self-represented party whose mailing address, telephone number, fax number, or e-mail address (if it was provided under rule 2.111(1)) changes while an action is pending must serve on all parties and file a written notice of the change."

59. All of the papers rejected by John Doe #1 pertained to cases in which final judgments have been entered. Such cases are no longer pending, so CRC 2.200 does not apply to them.

60. Neither does CCP 673 require that the creditor address as stated in the acknowledgment of assignment of judgment match the address on the judgment.

61. Roberts complained twice about the above-described rejection through the Court's Atlassian Service Desk webpage, explaining why the rejection was improper. His complaint and explanation were ignored.

62. Roberts first presented his explanation as to why the rejection was incorrect on January 10, 2026, at Question ID PUB-137768: "...[T]he judgment creditor expressly instructed me to use his current address, which is the address to which the assignment was sent and from which it was returned notarized. Requiring use of a potentially outdated address from the original judgment would defeat the purpose of the statute [CCP 673] and is inconsistent with its plain language."

63. The response was as follows:

TL   Timothy Ly  01/23/26 12:30 PM

If the judgment creditor's address had changed, Notice of Change of Address is required.

---

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

64. Roberts replied with a more in-depth explanation:

Gregg Roberts  02/04/26 3:23 PM

**FORMAL GRIEVANCE – REQUEST FOR SUPERVISORIAL INTERVENTION**

**Issue:** Erroneous rejection of post-judgment assignments/writs based on a misinterpretation of "pending" litigation under **CCP § 1049**.

1. **Improper Application of CRC 2.251(g):** The clerk rejected my batch of eight assignments claiming a "Notice of Change of Address" is required. The clerk cited **CRC 2.251(g)**, which only applies to "pending" actions. Per **CCP § 1049**, these cases are no longer pending as final judgments have been entered and the time for appeal has expired. The court is closed as to these parties. Requiring a "Change of Address" for a non-party (the former creditor) is an extra-legal requirement that violates the clerk's ministerial duty. **Civ. Code § 3528** ("The law respects form less than substance") applies here.

2. **Improper Writ Rejection (Case #30-2024-01378635-SC-SC-CJC):** The clerk rejected a Writ for including "A Domestic Corporation." However, **CCP § 699.520(d)** MANDATES that if a debtor is not a natural person, "the type of legal entity shall be stated." The clerk is demanding I remove a statutory requirement.

**Demand:** Reverse these rejections by **Friday, Feb 6** and inform me that you have done so. Failure to do so will result in formal legal action against the responsible individuals in their personal capacities, as the Court is not a "person" that can be validly sued. Because I first posted this message under the wrong request, I will give you more time to respond.

65. Question ID PUB-137768 never got reopened, nor did any OSC clerk ever communicate with Roberts in any other way in relation to the above set of rejections.

66. Apparently the Improper Writ Rejection was based on Roberts' omitting a period after the word "Corp" in the name of the judgment debtor, but that was not clear from the rejection and ensuing discussion.

67. After all of Roberts' attempts as documented above to move forward with enforcement of nine of the ten small claims judgments that he bought from the same judgment creditor, he gave up. The time and money that he spent to identify and purchase the judgments, and to fill out papers in hopes of enforcing them was wasted, and the opportunity to collect the total amount due and owing under all the judgments was taken from him, as a

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

10

direct result of the wrongful rejections by Timothy Ly, Jane Doe #1, and perhaps other OSC clerk staff who agreed that the wrongful rejections were valid.

**F.   Notice, Escalation, and Institutional Deliberate Indifference**

68. Roberts repeatedly notified clerks, supervisors, and court counsel of the legal defects described herein through written submissions, escalations, and by providing examples of identical filings previously accepted and processed correctly.

69. Despite this notice, Defendants failed to modify policies, implement corrective training, establish lawful workflows, or discipline personnel.

**G.   Official Policy, Custom, and Causation**

70. The constitutional violations described herein were caused by official policies, longstanding customs, or practices of the Clerk's Office and were not isolated or random acts.

71. These policies and customs include, but are not limited to:

a)   Requiring affidavits of identity to be filed and approved as standalone submissions before a writ or abstract may be filed;

b)   Rejecting legally compliant filings based on criteria not based on any applicable legal authority, or based on an obvious misunderstanding of such authority;

c)   Completing required portions of court-mandated forms with false or unauthorized legal statements; and

d)   Permitting materially identical filings to be accepted at some courthouses while rejected at others without notice or authority.

72. Defendants' failure to respond to Roberts' explanations as to why a given rejection or other action in response to a submitted paper was invalid, constitutes deliberate indifference.

73. Defendants' failure to adopt readily available, lawful administrative procedures – such as integrated processing of affidavits of identity and associated enforcement documents – constitutes further deliberate indifference.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

11

74. These policies and customs were the moving force behind Roberts' injuries within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**V. STANDING, RIPENESS, AND MOOTNESS**

75. Roberts has Article III standing because he has suffered concrete constitutional injuries caused by Defendants' practices and faces a real and immediate threat of recurrence.

76. Roberts routinely files enforcement documents and intends to continue doing so; Defendants have never disavowed the challenged practices or adopted binding policies prohibiting them.

77. Any temporary cessation of misconduct does not moot this action because Defendants retain discretion to resume the practices at any time.

78. Roberts' claims for prospective relief are ripe because he must choose between foregoing lawful enforcement or repeatedly enduring unconstitutional barriers to court access.

**VI. ELEVENTH AMENDMENT AND *EX PARTE YOUNG***

79. Roberts' claims for prospective declaratory and injunctive relief against Defendant Clerks in their official capacities are authorized by *Ex parte Young*, 209 U.S. 123 (1908).

80. Defendant Clerks have a direct connection to, and responsibility for, the challenged filing practices, including authority over clerk training, supervision, workflow design, and filing policies.

81. Roberts does not seek retroactive relief or damages payable from the state treasury from any official-capacity claim.

82. The declaratory and injunctive relief sought is narrowly tailored to compel Defendant Clerks' future compliance with federal constitutional requirements and governing California statutes.

**VII. CAUSES OF ACTION**

**Count I**

**Violation of First Amendment Right of Access to the Courts**
*(42 U.S.C. § 1983)*

83. Roberts incorporates all preceding paragraphs.

---

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

84. Defendants, acting under color of state law, unreasonably and arbitrarily burdened Plaintiff's right of access to the courts by rejecting legally compliant filings, completing court-mandated forms with false legal statements, and imposing unauthorized filing prerequisites.

**Count II**

**Violation of Procedural Due Process**
*(Fourteenth Amendment)*

85. Plaintiff incorporates all preceding paragraphs.

86. By enforcing ad hoc filing requirements and completing required court forms with false legal conclusions, Defendants deprived Roberts of a meaningful opportunity to be heard and to enforce valid court judgments.

**VIII. PRAYER FOR RELIEF**

Roberts respectfully requests that this Court:

1. Declare that Defendants' practices violate the First and Fourteenth Amendments;

2. Enjoin Defendants from rejecting legally compliant filings absent statutory authority;

3. Enjoin Defendants from completing court-mandated forms with false or unauthorized legal conclusions;

4. Enjoin Defendants from requiring affidavits of identity to be filed separately from associated writs or abstracts when the Code of Civil Procedure contemplates a single integrated filing;

5. Award Roberts compensatory damages according to proof, currently estimated as follows with interest continuing to accrue at 10% per annum on the judgments listed:

   a. $8200.00 from LASC clerks for the wasting of Roberts' e-filing fees and professional time;

   b. $619,531.88 from Sandra Pigati-Pazano and all other LASC clerks who collaborated in her decision to make a false statement on the memorandum of garnishee, representing the current amount due and owing under the judgment in Case #BC546748 (*Pargev Minassian v. MIM Entertainment et al.*), the judgment

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

13

that was levied upon in Case #BC709072 (*Retail Capital, LLC vs Pargev Minassian, an Individual, DBA Hye Cuisine*); and

c. $30,594.56 from OSC clerks including Jane Doe #1 and Timothy Ly, representing the current amount due and owing under the nine judgments that said clerks blocked Roberts from enforcing, with case numbers:

- 30-2024-01378635-SC-SC-CJC
- 30-2023-01301617-SC-SC-CJC
- 30-2024-01378222-SC-SC-CJC
- 30-2023-01359231-SC-SC-CJC
- 30-2022-01274533-SC-SC-CJC
- 30-2022-01284366-SC-SC-CJC
- 30-2023-01355938-SC-SC-CJC
- 30-2023-01360538-SC-SC-CJC
- 30-2023-01308662-SC-SC-CJC

6. Award costs and attorney's fees under 42 U.S.C. § 1988; and

7. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated April 8, 2026.

_____

Gregg Roberts, Plaintiff Pro Se

---

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

## IX. APPENDIX A

**Statutory Provisions Subject to Judicial Notice**

**Code of Civil Procedure § 680.135**:

"'Affidavit of identity' means an affidavit made by the judgment creditor that sets forth facts sufficient to identify the judgment debtor as the person whose name appears on the judgment, abstract of judgment, or writ of execution."

**Code of Civil Procedure § 673** (excerpt):

"(b) An acknowledgment of assignment of judgment shall contain ... (3) The name and address of the judgment creditor and name and last known address of the judgment debtor...."

**Code of Civil Procedure § 674(a)** (excerpt):

"An abstract of a judgment or decree requiring the payment of money shall be accompanied by an affidavit of identity of the judgment creditor if the name of the judgment debtor is different from the name shown on the judgment."

**Code of Civil Procedure § 700.010(a)** (excerpt):

"A writ of execution shall be issued by the clerk of the court upon application of the judgment creditor."

**Rule of Court 2.200**:

"An attorney or self-represented party whose mailing address, telephone number, fax number, or e-mail address (if it was provided under rule 2.111(1)) changes while an action is pending must serve on all parties and file a written notice of the change."

**FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS (42 U.S.C. § 1983), AND VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

15