Gregg Roberts

43430 E Florida Ave F-293

Hemet CA 92544

951-330-4450

gregg@legalsupport-sc.com

Plaintiff Pro Se

FILED

CLERK, U.S. DISTRICT COURT

06/26/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____kl_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| Gregg Roberts,<br><br>Plaintiff,<br><br>v.<br><br>David W. Slayton, et al.,<br><br>Defendants. | **Case No. 5:26-CV-00400-CAS-DMK**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: July 23, 2026<br>Time: 1:30 p.m.<br>Courtroom: 880<br>Judge: Hon. Diana M. Kwok |

**Table of Contents**

I.      INTRODUCTION ........................................................................................ 4

II.     RELEVANT ALLEGATIONS ..................................................................... 4

III.    ARGUMENT ............................................................................................... 7

    A.   Applicable Rule 12 Standards ................................................................. 7

    B.   Defendants' Motion Mischaracterizes Postjudgment Enforcement Administration as Judicial Decisionmaking. ................................................ 8

    C.   Defendants' "Not A Person" Argument Does Not Bar the Personal-Capacity Claims. 10

    D.   The Official-Capacity Claims for Prospective Relief Are Not Barred by the Eleventh Amendment or *Will*. ................................................................ 12

    E.   Absolute Quasi-Judicial Immunity Does Not Require Dismissal At The Pleading Stage. 14

    F.   Section 1983 Does Not Bar Plaintiff's Equitable Claims. ..................... 20

    G.   Plaintiff Has Standing to Seek Prospective Relief. ............................... 21

    H.   Defendants Do Not Challenge the Merits of Plaintiff's Constitutional Theories, and the Court Should Not Dismiss on Grounds Not Presented. ........................... 24

    I.   Leave To Amend Should Be Granted If Any Deficiency Is Found. ............ 24

IV.     CONCLUSION .......................................................................................... 25

**Cases**

*Amy v. Supervisors*, 78 U.S. 136 (1871) ........................................................................ 16

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ......................................... 14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 7

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)................................................................... 16

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).......................................................... 23

*Ex parte Young* ..................................................................................................... passim

*Hafer v. Melo*, 502 U.S. 21 (1991)....................................................................... passim

*In re Castillo*, 297 F.3d 940 (9th Cir. 2002)................................................... 15, 16, 18

*Kentucky v. Graham*, 473 U.S. 159 (1985) ........................................................ 10, 13, 26

*Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963 (9th Cir. 2010) ..............11, 19

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ......................................................... 7

*Mishler v. Clift*, 191 F.3d 998 (9th Cir. 1999).......................................................... 15, 17

*Monell v. Department of Soc. Servs.,* 436 U.S. 658 (1978) ........................................11, 12

*Mullis v. United States Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987).................. 18

*Munoz v. Superior Court of Los Angeles County*, 91 F.4th 977 (9th Cir. 2024) ..................... 13, 14

*O'Shea v. Littleton*, 414 U.S. 488 (1974)..................................................................... 23

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ........................................... 19, 21

*Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) ......................... passim

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ...................................................... 13

**Statutes**

42 U.S.C. § 1983...................................................................................................... passim

CA CCP § 673....................................................................................................... 9, 18

CA CCP § 680.135................................................................................................. 7, 17

CA CCP § 699.510................................................................................................. 7, 17

CA CCP § 700.190............................................................................................. 6, 16, 21

CA CRC 2.251(g)....................................................................................................... 7

Eleventh Amendment.............................................................................................. 24

FRCP 15(a)(2)........................................................................................................... 24

Rule 12(b)(1)............................................................................................................. 7

Rule 12(b)(6)......................................................................................................... 7, 20

## I.   INTRODUCTION

Defendants' motion depends on one recurring premise: that every challenged act alleged in the First Amended Complaint ("FAC") was part of the judicial process merely because it was performed by a court employee or involved papers submitted to, issued by, or completed by a court clerk. That premise is vastly overbroad.

Plaintiff does not sue over judicial rulings, hearing administration, evidentiary decisions, docket control, scheduling decisions, vexatious-litigant orders, bail determinations, or adjudication of disputed rights. The conduct challenged in the FAC occurred after judgment, during enforcement of rights that had already been adjudicated. The relevant context is not active litigation management. It is postjudgment enforcement under California's Enforcement of Judgments Law.

That difference matters. Absolute quasi-judicial immunity depends on the function performed, not the title of the person performing it. The Supreme Court and Ninth Circuit do not apply a blanket rule that all acts by court employees are judicial acts. The question is whether the particular function at issue is functionally comparable to the work of a judge or otherwise closely tied to adjudication. The allegations here plausibly describe *non-adjudicative* administrative and ministerial functions, including the completion of a memorandum of garnishee, the issuance or rejection of writs of execution, the handling of affidavits of identity (*before* they are forwarded to a judicial officer to decide whether to add the requested additional names of the judgment debtor), and the filing of acknowledgments of assignment of judgment.

---

Defendants' motion also conflates official-capacity and personal-capacity liability. Plaintiff seeks damages against individual defendants in their personal capacities and prospective declaratory and injunctive relief against appropriate official-capacity defendants. Supreme Court authority makes that distinction dispositive. State officials sued in their individual capacities are "persons" under 42 U.S.C. § 1983, even when the challenged acts were taken under color of state law. And state officials sued in their official capacities for prospective relief may be proper defendants under *Ex parte Young* and *Will*'s own footnote 10.

Defendants rely heavily on *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), but *Will* involved the State and a state official sued in his official capacity. *Will* did not involve damages claims against officials sued in their personal capacities. **Defendants' motion relies entirely on a reading of *Will* that was expressly rejected by the Supreme Court decades ago in *Hafer v. Melo*, 502 U.S. 21 (1991)—a dispositive authority that Defendants' brief conspicuously fails to mention or distinguish.[1]** *Hafer* expressly clarified that point. *Will* therefore does not bar Plaintiff's personal-capacity damages claims.

The motion should be denied. At minimum, if the Court concludes that any portion of the FAC requires clarification, Plaintiff respectfully requests leave to amend.

---

[1] Plaintiff sent a summary of how *Hafer* applies here, and a link to it, to Defendant's counsel in conferral. *Roberts Declaration*, para 10.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

5

## II.  RELEVANT ALLEGATIONS

Plaintiff is a judgment creditor who regularly files enforcement-related pleadings in California Superior Courts. FAC ¶ 8. He routinely submits writs of execution, abstracts of judgment, memoranda of costs, assignments of judgment, affidavits of identity, and related enforcement documents. FAC ¶¶ 12-13.

The FAC alleges multiple categories of postjudgment conduct.

First, in Los Angeles Superior Court Case No. BC709072, Defendant Pigati-Pazano completed a required portion of a memorandum of garnishee by inserting the statement that "The Clerk of the Court is not a garnishee and does not hold any property in this case." FAC ¶ 15. Plaintiff alleges that the statement was inconsistent with California Code of Civil Procedure ("CCP") § 700.190, improperly characterized the clerk's statutory role, and caused the Los Angeles County Sheriff's Department to refuse to proceed with enforcement. FAC ¶¶ 16-24. Plaintiff also alleges surrounding confusion in the handling of the same levy, but the principal § 700.190 injury alleged in the FAC is the unauthorized statement in the memorandum of garnishee and its resulting effect on enforcement.

Second, Plaintiff alleges that LASC rejected a writ of execution on the ground that Plaintiff was attempting to change the judgment debtor's name, when Plaintiff was instead complying with the requirement that the writ state the judgment debtor's legal-entity type. FAC ¶¶ 34-43.

Third, Plaintiff alleges that LASC requires affidavits of identity to be filed separately from the associated writ or abstract, causing duplicate filings, serial review, additional fees, and delay, despite statutes providing that the affidavit is *by definition* filed at the time the judgment creditor applies for a writ or abstract and is filed with the application. FAC ¶¶ 45-52; CCP §§ 680.135, 699.510.

Fourth, Plaintiff alleges that clerks employed by Orange Superior Court rejected acknowledgments of assignment of judgment because the address stated for the judgment creditor did not match the address in the Court's records, even though the rule relied upon for the rejection – California Rules of Court ("CRC") 2.251(g) – applies exclusively and explicitly to "pending" cases rather than postjudgment cases. FAC ¶¶ 53-65. Plaintiff further alleges another Orange County writ rejection based on punctuation in a corporate name. FAC ¶ 66.

Plaintiff seeks damages against Defendants in their personal capacities and declaratory and prospective injunctive relief against official-capacity defendants. FAC ¶¶ 9-10; Prayer.

**III. ARGUMENT**

A.  *Applicable Rule 12 Standards.*

Because Defendants move under Rule 12(b)(6) and make a facial Rule 12(b)(1) challenge, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Defendants' immunity arguments therefore warrant

dismissal only if the asserted immunity is established from the pleaded facts and the specific functions alleged.

*B.  Defendants' Motion Mischaracterizes Postjudgment Enforcement Administration as Judicial Decisionmaking.*

Defendants repeatedly describe this case as involving the "processing and rejection" of filings. *Mot.* at 8-9, 15-18. That framing is incomplete and misleading.

All of the acts about which Plaintiff complains occurred *after judgment*. Plaintiff is not challenging decisions made while a case was being adjudicated. He is not challenging the scheduling of hearings, management of trial proceedings, adjudication of motions, entry of judicial orders, or enforcement of a judge's direction. He challenges administrative conduct that obstructed the enforcement of judgments already entered.

That difference distinguishes this case from the authorities Defendants rely upon. Cases involving docket control, scheduling, notice of hearings, vexatious-litigant proceedings, bail decisions, disciplinary hearings, or the filing of pleadings in active litigation involve functions closely connected to adjudication. Postjudgment enforcement administration does not automatically become adjudicative merely because it occurs in a courthouse.

The memorandum-of-garnishee allegation illustrates the largest problem with Defendants' framing. That allegation is clearly not about rejection of a filing. It concerns a statutory response form completed by a garnishee after levy service. Banks, employers, and other

third parties complete memoranda of garnishee when served with levy papers. Completing that form is not adjudication. It does not require a hearing, the weighing of evidence, judicial discretion, or resolution of disputed rights. It is informational and administrative.

The acknowledgment-of-assignment allegations, likewise, concern postjudgment and non-adjudicative clerk conduct. When a judgment creditor submits, for filing, an acknowledgment of assignment under CCP § 673, the creditor is not requesting a hearing, placing a matter on calendar, inviting judicial review, providing (or requesting that the Court provide) due-process notice to litigants, or asking the court to decide who owns the judgment. The assignment transfers ownership by contract. The filing updates the court's records to reflect the identity of the current judgment creditor and the person entitled to pursue future enforcement remedies.

Likewise, issuance of a writ of execution after judgment is not adjudication of disputed rights. The rights of the creditor and debtor that were in dispute when the litigation began have already been adjudicated. The writ is the statutory enforcement mechanism. When a clerk rejects a writ based on a non-statutory requirement or a misunderstanding of the legal-entity information required on the form, the clerk is not deciding a motion or resolving a dispute; the clerk is obstructing access to an enforcement process created by statute.

Defendants' motion succeeds only if the Court accepts the proposition that ANY filing-related or enforcement-related action by a clerk is automatically judicial in character. That is not the law.

*C. Defendants' "Not A Person" Argument Does Not Bar the Personal-Capacity Claims.*

Defendants argue that none of the Defendants is a "person" under § 1983. *Mot.* at 13-14. That argument is overbroad.

Defendants' reliance on official-capacity damages principles attacks a claim Plaintiff did not plead. Plaintiff does not seek damages from the State, the Superior Courts, or official-capacity defendants. The FAC seeks damages only against personal-capacity defendants and seeks only declaratory and prospective injunctive relief against official-capacity defendants. FAC ¶¶ 9-11, 81, and Prayer. Supreme Court authority squarely permits that structure.

In *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the Court explained that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.". The Court further explained that "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166.

*Hafer v. Melo* later resolved the precise confusion Defendants' argument creates. There, the Supreme Court held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." 502 U.S. 21, 31 (1991). The Court rejected the argument that acts performed pursuant to official authority automatically become acts of the State immune from personal-capacity liability. *Id.* at 27-29. Indeed, *Hafer* explained that a state official may be liable "precisely because of her authority" under state law. *Id.* at 27. Defendants' Motion does not address *Hafer*, which confirms the distinction Defendants' motion otherwise tends to obscure:

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

official-capacity damages claims against state officials are treated as claims against the State, but personal-capacity damages claims against state officials remain available under § 1983.

To the extent Defendants' motion blurs the distinction between official-capacity and personal-capacity claims, *Hafer* forecloses any contention that Plaintiff's personal-capacity damages claims fail merely because the challenged conduct occurred under color of official authority. The fact that the individual defendants were working as clerks or court administrators does not eliminate personal-capacity liability. Section 1983 is aimed at persons acting under color of state law. It would invert the statute to say that an individual defendant ceases to be a person because the challenged act occurred while exercising state-conferred authority.

Defendants rely on *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), but *Will* involved the State and a state official sued in his official capacity. *Will* did not involve damages claims against officials sued in their personal capacities. *Hafer* expressly clarified that point. *Will* therefore does not bar Plaintiff's personal-capacity damages claims.

*Krainski* does not help Defendants on this issue. There, the Ninth Circuit dismissed official-capacity claims against UNLV employees under the Eleventh Amendment, but then separately analyzed the personal-capacity claims under qualified immunity. 616 F.3d 963, 967-68 (9th Cir. 2010). If state employees sued personally were not "persons" under § 1983, the Ninth Circuit would not have proceeded to qualified immunity at all.

Nor does Plaintiff rely on *Monell* to impose municipal liability on the State, the Superior Courts, or any state entity. To the extent the FAC uses policy, custom, or "moving force"

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT
11

terminology, those allegations support Plaintiff's claims of ongoing practices, causation, deliberate indifference or personal involvement, and the connection required for prospective relief. If the Court concludes that the FAC's use of *Monell* terminology creates ambiguity, the proper remedy is leave to amend, not dismissal with prejudice.

Defendants may suggest that personal-capacity suits against court employees would impair court administration. But the Supreme Court has already rejected the broader premise that state officials are insulated from personal-capacity liability merely because they acted pursuant to official authority. Concerns about burdening public officials are addressed through applicable immunity doctrines, not by converting every official act into an act of the State immune from personal liability. *Hafer*, 502 U.S. at 29.

The personal-capacity defendants are "persons" under § 1983. The remaining question is whether they are entitled to absolute quasi-judicial immunity for the specific functions alleged. That is a different question, addressed below.

D. *The Official-Capacity Claims for Prospective Relief Are Not Barred by the Eleventh Amendment or* Will.

Defendants' Eleventh Amendment argument is also overbroad.

Plaintiff does not seek official-capacity damages. Plaintiff seeks prospective declaratory and injunctive relief against official-capacity defendants. FAC ¶¶ 9-10; Prayer. That is the classic office of *Ex parte Young*.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

12

*Will* itself recognizes this distinction. In footnote 10, the Supreme Court stated: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. *Graham* says the same thing: "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n.14.

The Ninth Circuit has applied the same rule in the judicial-branch context. In *Wolfe v. Strankman*, the Ninth Circuit held that state judicial officials sued in their official capacities for prospective injunctive and declaratory relief fell within the *Ex parte Young* exception and were properly brought under § 1983. 392 F.3d 358, 364-66 (9th Cir. 2004).

*Munoz v. Superior Court of Los Angeles County* does not require a different result. 91 F.4th 977 (9th Cir. 2024). *Munoz* involved claims against the Superior Court itself and against a presiding judge acting in his judicial capacity regarding the setting of cash bail. *Id.* at 980-81. The Ninth Circuit held that state courts and state-court judges acting in a judicial capacity are protected by Eleventh Amendment immunity. *Id.* But *Munoz* expressly noted that *Wolfe* allowed some claims to proceed against judicial defendants sued in an "administrative, as opposed to judicial, capacity," and stated that issue was not before the court. *Id.* at 981 n.1. Plaintiff does not sue the Superior Courts themselves, does not challenge bail determinations or other judicial rulings, and does not seek relief against judges acting in a judicial capacity. Plaintiff seeks prospective relief directed to administrative and ministerial postjudgment enforcement practices.

The district-court decisions cited by Defendants, *Gupta* and *Camacho Hernandez*, cannot expand *Munoz* into a categorical bar broader than what the Ninth Circuit actually held.

Defendants' reliance on Eleventh Amendment immunity therefore cannot support dismissal of all official-capacity claims. At most, it confirms a point irrelevant to the claims actually pleaded: Plaintiff has not sought official-capacity damages from state officials or state entities. Instead, the FAC seeks prospective relief to restrain ongoing practices and require future compliance with federal rights.

Defendants' cited cases involving state entities, state agencies, or official-capacity damages claims do not eliminate *Ex parte Young*. Nor does the fact that the defendants work in the judicial branch eliminate the exception. The relevant question is whether the official-capacity defendant has a sufficient connection to the challenged practice and whether the relief sought is prospective. Plaintiff alleges that Defendants Slayton and Yamasaki are responsible for administration, supervision, training, and policy-setting regarding clerk intake and filing practices. FAC ¶¶ 9-10. Those allegations are sufficient at the pleading stage.

E.   *Absolute Quasi-Judicial Immunity Does Not Require Dismissal At The Pleading Stage.*

    1.   <u>The governing test is functional and narrow.</u>

The governing test is functional and narrow. Absolute immunity is not presumed; it is extended sparingly and only when justified by the specific function at issue. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432, 435-37 (1993). The burden rests entirely on the party

asserting it. **Defendants attempt to bypass this mandatory inquiry by engaging in an analytical sleight-of-hand: they apply a vague, catch-all label of "processing papers" to distinct postjudgment administrative tasks—such as a clerk responding as a third-party garnishee—in an effort to resurrect a doctrine of absolute status-based immunity that the Supreme Court has explicitly and repeatedly forbidden**.

In *Antoine*, the Supreme Court rejected absolute immunity for court reporters even though their work was important to the judicial process. The Court held that the relevant inquiry is not whether the officer works in the court system or performs an important task, but whether the function is comparable to the work of judges and involves the kind of discretionary judgment protected by judicial immunity. *Id.* at 435-37.

The Ninth Circuit applies the same functional limitation. In *Mishler v. Clift*, the court held that although medical-board members were immune for quasi-judicial acts, "such protection does not extend to [their] ministerial acts." 191 F.3d 998, 1001 (9th Cir. 1999) . The court emphasized that "[t]he burden of showing that immunity is available is upon the official who seeks it," *id.* at 1002, and that absolute immunity reaches "only those actions that are judicial or closely associated with the judicial process." *Id.* at 1007.

The Ninth Circuit applied *Antoine* in *In re Castillo*, 297 F.3d 940 (9th Cir. 2002). *Castillo* held that a Chapter 13 trustee was immune for scheduling and noticing a confirmation hearing because those acts were part of controlling the docket in the resolution of disputes. *Id.* at 952-53. But *Castillo* did not adopt blanket immunity for all trustee or court-adjacent functions. To the

contrary, the court expressly stated: "We do not hold that all of the Trustee's many functions are covered by absolute quasi-judicial immunity." *Id.* at 953.

Long before modern § 1983 immunity doctrine, the Supreme Court recognized that public officers may be personally liable for failing to perform mandatory ministerial duties, and that mistake or honest intention does not convert a ministerial duty into an immune discretionary or judicial act. *Amy v. Supervisors*, 78 U.S. 136, 138 (1871). Modern cases have not overruled that principle. In *Bogan v. Scott-Harris*, the Supreme Court distinguished *Amy* precisely because the duty there was ministerial, confirming that the ministerial/discretionary distinction remains relevant to immunity analysis. 523 U.S. 44, 51-52 (1998).

Thus, the question is not whether Defendants were court employees. The question is what functions they were performing when they engaged in the complained-of conduct.

2. The alleged functions are postjudgment, administrative, and non-adjudicative.

The FAC alleges functions materially different from the adjudicative functions in Defendants' authorities. The alleged functions are postjudgment, administrative, and non-adjudicative.

The memorandum-of-garnishee claim does not involve filing review, docket control, or adjudication. Plaintiff alleges that LASC, acting as garnishee under CCP § 700.190, completed a statutory response form with an unauthorized statement that caused the Sheriff to halt enforcement. FAC ¶¶ 15-24. Banks and employers complete similar garnishee forms. A bank

does not adjudicate rights when it completes a memorandum of garnishee, and neither does a court clerk. The function is to provide required information in response to levy service, not to resolve disputed rights. Defendants' insistence on characterizing a clerk's completion of a third-party statutory disclosure form as an immune "adjudicative act" is legally untenable and flatly contradicted by the plain mechanics and context of the Enforcement of Judgments Law.

The writ-rejection allegations concern postjudgment issuance of enforcement process. FAC ¶¶ 34-43, 64-66. A writ of execution is issued after judgment. Its purpose is enforcement, not adjudication. Plaintiff alleges that the writ was rejected for reasons not authorized by statute, including treating the required legal-entity designation as an unauthorized name change. Whether the clerk was right or wrong about the statutory requirements, the function remained ministerial review of postjudgment enforcement process, not adjudication of disputed rights.

*Mishler* is especially instructive because the Ninth Circuit held that responding to another board's inquiry was not absolutely immune where the act was "at its essence, an administrative function entailing examination of records and sending of correspondence." 191 F.3d at 1008. The postjudgment clerk functions alleged here are similarly administrative: examining records, comparing papers to objective statutory requirements, and accepting, issuing, completing, or rejecting enforcement documents.

The affidavit-of-identity allegations challenge an administrative workflow. FAC ¶¶ 45-52. Plaintiff alleges that LASC requires separate filing and approval of affidavits of identity even though CCP § 680.135 and 699.510 contemplate filing the affidavit at the time of, and with, the

writ or abstract application. That is not docket control. It is an alleged administrative precondition imposed on judgment creditors before enforcement documents will be processed.

The assignment allegations are likewise non-adjudicative. FAC ¶¶ 53-65. An acknowledgment of assignment of judgment under CCP § 673 updates the court's records to reflect the identity of the current judgment creditor and the person entitled to pursue enforcement remedies. It does not ask the court to decide whether the assignment is valid as between assignor and assignee. It does not require notice to the debtor, schedule a hearing, or resolve a dispute. It is postjudgment record maintenance.

These alleged acts did not move cases toward adjudication. They occurred after adjudication and affected administration of already-adjudicated rights.

3.   Defendants' authorities are distinguishable.

Defendants rely heavily on *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987). *Mullis* involved federal bankruptcy proceedings, including the filing and attempted amendment of a bankruptcy petition, judicial management of an active bankruptcy case, and available appellate or mandamus remedies within the federal judicial system. *Id.* at 1388-95. *Mullis* does not establish that every postjudgment enforcement act by a state court clerk is judicial in character.

*Castillo* is similarly distinguishable. The protected functions there were scheduling and noticing a confirmation hearing. 297 F.3d at 952-53. The Ninth Circuit treated notice as

inseparable from the hearing because notice to litigants is part of the process due in adjudicative proceedings. *Id.* Plaintiff's allegations here do not involve notice of hearings, scheduling of hearings, or management of a docket in the resolution of disputes.

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), is also materially different. The plaintiffs there sought to prevent state-court clerks from docketing a category of lawsuits involving SB 8. Plaintiff seeks no order preventing clerks from docketing cases, judges from hearing cases, or courts from adjudicating disputes. Plaintiff seeks prospective compliance with mandatory, non-adjudicative duties governing postjudgment enforcement paperwork.

*Krainski* is even farther afield. It involved campus police, arrest, student discipline, notice of a disciplinary hearing, university adjudication, and a disciplinary notation. 616 F.3d at 965-67. It did not involve court clerks, writs of execution, assignments of judgment, affidavits of identity, or memoranda of garnishee.

The unpublished and district court decisions cited by Defendants likewise do not create a blanket rule. At most, they show that filing-related conduct can be immune when closely connected to adjudication or case management. They do not hold that all postjudgment enforcement functions, or even most of them, are judicial.

    4.   <u>The motion seeks wholesale dismissal even though at least some alleged functions are plainly non-adjudicative.</u>

Even if Defendants could identify some conduct arguably connected to the judicial process, that would not justify dismissal of the entire FAC. Defendants must establish immunity for the specific functions at issue. The memorandum-of-garnishee allegation alone defeats the motion's one-size-fits-all approach because that conduct was not filing review, docket control, hearing administration, or adjudication.

At minimum, the FAC plausibly alleges non-adjudicative conduct. That is enough to defeat a Rule 12(b)(6) motion premised on absolute quasi-judicial immunity.

*F.   Section 1983 Does Not Bar Plaintiff's Equitable Claims.*

Defendants argue that injunctive relief is barred by § 1983 itself. *Mot.* at 18-19. The argument again depends on characterizing the alleged conduct as judicial.

Section 1983 provides that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity," injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983. By its terms, the limitation applies only to acts or omissions taken in a judicial capacity.

For the reasons stated above, Plaintiff plausibly alleges non-adjudicative, postjudgment enforcement administration. Defendants have not established that completing a memorandum of garnishee form, rejecting a writ for non-statutory reasons, imposing a separate affidavit-of-identity filing workflow, or rejecting acknowledgments of assignment are acts taken in a judicial capacity.

Moreover, Plaintiff seeks declaratory relief as well as injunctive relief. The Federal Courts Improvement Act of 1996 (FCIA)  limits certain injunctive relief; it does not bar declaratory relief. Defendants' motion therefore cannot support dismissal of the equitable claims in their entirety.

Nor does Plaintiff seek the kind of intrusive relief rejected in *Whole Woman's Health*. Plaintiff does not ask this Court to stop state courts from docketing cases, prevent judges from hearing cases, or interfere with adjudication. Plaintiff seeks prospective compliance with mandatory procedures governing postjudgment enforcement filings and forms.

If the Court concludes that any requested injunction is too broad, the proper remedy is not dismissal with prejudice. The Court may narrow the relief, allow declaratory relief to proceed, or grant leave to amend the prayer. Plaintiff can allege and request narrower relief, including a declaration concerning the legal effect of the statement "the Clerk is not a garnishee" in the context of CCP § 700.190, future enforcement of the same judgment, and any future invocations of § 700.190 in other judgment enforcement activity conducted by Plaintiff.

G.  *Plaintiff Has Standing to Seek Prospective Relief.*

Defendants argue that the bulk of Plaintiff's equitable claims fail for lack of standing. *Mot.* at 19-21. The argument again treats the challenged conduct as isolated historical events. The FAC alleges otherwise.

Plaintiff alleges that he is a judgment creditor who regularly files enforcement-related pleadings in California Superior Courts. FAC ¶ 8. He routinely submits writs, abstracts, memoranda of costs, assignments of judgment, and related enforcement documents. FAC ¶ 12. The FAC further alleges repeated clerk rejections and improper processing based on practices, customs, and workflows, not isolated mistakes. FAC ¶¶ 1-3, 14, 45-52.

At the pleading stage, those allegations are sufficient to allege a realistic threat of recurrence. Plaintiff is not speculating that he may one day encounter an unusual police practice or criminal procedure. He is alleging that he regularly uses the same postjudgment enforcement systems and will continue to submit the same types of documents to the same courts.

The affidavit-of-identity claim is especially concrete because it challenges an ongoing workflow. Plaintiff alleges that LASC requires affidavits of identity to be filed separately from associated writs or abstracts. FAC ¶¶ 45-52. That practice, if ongoing, will affect Plaintiff whenever he seeks writs or abstracts requiring affidavits of identity.

The memorandum-of-garnishee issue also presents a concrete threat of recurrence. Plaintiff remains the owner of the judgment involved in Case No. BC709072 and intends to continue enforcement efforts. [Roberts Decl. ¶ 2-3.] Defendants have not retracted the challenged position, and prior communications from LASC indicated that the statement would not be withdrawn. [Roberts Decl. ¶ 4-5, and Exhibit 1 thereto.] The risk is therefore *not at all* conjectural or speculative; Plaintiff intends to resume the same enforcement effort and faces the same asserted position.

The writ and assignment allegations likewise concern recurring postjudgment enforcement procedures. Plaintiff alleges that multiple compliant filings were rejected for non-statutory reasons. FAC ¶¶ 34-43, 53-67. Plaintiff also has encountered similar postjudgment writ rejections in other counties, including a rejection based on misunderstanding the legal-entity requirement on a writ of execution. [Roberts Decl. ¶ 7.] These experiences reinforce that the injury is not merely past; it arises from recurring administrative misunderstandings in postjudgment enforcement.

*City of Los Angeles v. Lyons* and *O'Shea v. Littleton* do not require dismissal. Those cases involved speculative future exposure to law-enforcement or criminal-court practices dependent on uncertain future events. Here, Plaintiff regularly and lawfully invokes postjudgment enforcement procedures. Plaintiff need only continue doing what he already does: enforcing judgments through statutory procedures. Based on thirteen years of experience filing and processing postjudgment enforcement papers in California Superior Courts, Plaintiff faces a realistic and recurring risk that the same kinds of non-statutory clerk screening requirements, writ rejections, assignment-filing refusals, and enforcement-processing errors alleged in the FAC will recur.

Plaintiff need not predict the precise statutory misunderstanding that will cause the next improper rejection. The FAC identifies recurring categories of postjudgment enforcement papers Plaintiff regularly files—writs of execution, acknowledgments of assignment, affidavits of identity, and levy-related forms—and alleges that those papers have been rejected or obstructed based on non-statutory screening requirements and misunderstandings of objective enforcement

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT
23

statutes. The realistic threat of recurrence is not that a clerk somewhere may make any mistake; it is that Plaintiff will again be denied access to postjudgment enforcement process when he submits the same categories of enforcement papers in the ordinary course of his judgment-enforcement work.

### H. Defendants Do Not Challenge the Merits of Plaintiff's Constitutional Theories, and the Court Should Not Dismiss on Grounds Not Presented.

Defendants' motion is directed at threshold defenses: Eleventh Amendment immunity, "person" status, quasi-judicial immunity, FCIA, and standing. Defendants do not meaningfully argue that the FAC fails to allege injury to access to courts or procedural due process apart from those defenses.

Accordingly, the Court need not decide at this stage whether Plaintiff will ultimately prove a constitutional violation. The issue now is whether Defendants have established that no claim may proceed as a matter of law. They have not.

### I. Leave To Amend Should Be Granted If Any Deficiency Is Found.

Defendants request dismissal with prejudice. That request should be denied.

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). Dismissal without leave is improper unless amendment would be futile. Here, any perceived defect could be addressed by amendment.

If necessary, Plaintiff can amend to clarify:

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT
24

1. That official-capacity damages are not sought;

2. That personal-capacity damages are sought only against individual defendants personally involved in or deliberately indifferent to the challenged conduct;

3. That Plaintiff intends to resume enforcement of the judgment involved in the memorandum-of-garnishee allegations;

4. That LASC has not disavowed any of the challenged positions;

5. That the declaratory relief sought may be narrowed to address the legal effect of the challenged memorandum-of-garnishee statement;

6. That the challenged affidavit-of-identity procedure is ongoing; and

7. That Plaintiff regularly submits postjudgment enforcement documents and faces recurrence of the challenged practices.

Because amendment would not be futile, dismissal with prejudice would be improper.

**IV. CONCLUSION**

Defendants' motion treats postjudgment enforcement administration as judicial adjudication. The cited cases do not require that result. Plaintiff alleges that court employees and administrators interfered with the exercise of already-adjudicated rights through non-adjudicative conduct: completing a statutory garnishee form with an unauthorized statement, rejecting writs for non-statutory reasons, imposing an unauthorized affidavit-of-identity workflow, and rejecting

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

25

acknowledgments of assignment that would have updated court records concerning the current judgment creditor.

The personal-capacity claims are not barred by *Will* because *Hafer* and *Graham* expressly permit personal-capacity § 1983 claims against state officials acting under color of law. The official-capacity claims for prospective relief are not barred by the Eleventh Amendment because *Ex parte Young*, *Will* footnote 10, and *Graham* recognize such claims. Absolute quasi-judicial immunity does not require dismissal because Defendants have not shown that the alleged functions were judicial or adjudicative. The FCIA limitation does not bar declaratory relief and does not apply unless the challenged acts were taken in a judicial capacity. Plaintiff has standing because he regularly uses the same postjudgment enforcement procedures and intends to resume enforcement of the same judgment involved in the memorandum-of-garnishee allegations.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss. In the alternative, Plaintiff requests leave to amend.

**Certificate of Compliance**

The undersigned, Plaintiff Pro Se, certifies that the body of this brief contains 5,240 words, which complies with the word limit of L.R. 11-6.1.

Dated June 26, 2026 and Respectfully Submitted,

_____

Gregg Roberts, Plaintiff Pro Se

_____